## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DALE WHITE, BAN MURRAY, and STEVEN H. BAKER, On Behalf of Themselves and All Others Similarly Situated,** | § § § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION NO. 1:11-cv-2186** |
| **v.** | § § | **JURY TRIAL DEMANDED** |
| **INTEGRATED ELECTRONIC TECHNOLOGIES, INC., and DISH NETWORK SERVICE, L.L.C.** | § § § § | **ALL CASES** |
| **Defendants.** | § § | |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION

#### *INTRODUCTION*

Plaintiffs are satellite technicians who perform Dish Network Service, L.L.C. (hereafter DISH) work orders for DISH customers.  DISH is a major supplier of satellite programming and services in the United States.  DISH was established in March 1996, and currently serves approximately 14 million customers nationwide. DISH had over 14 billion dollars in revenue in 2011.[1] This revenue is primarily derived from subscriptions for programming by DISH customers.  The integral function of installing, repairing, and upgrading the satellites dishes that form the nexus between DISH and its customers is done by a satellite technician (hereafter technician). This technician arrives at the DISH customer's home, in a DISH uniform, pursuant to a DISH work order, in a vehicle with a DISH logo on the side of it, and performs the necessary work while under strict control by DISH and its fulfillment partners.

DISH has created a company-wide fulfillment system that violates the Fair Labor

---

[1] See Ex. 1, Dish Network 2011 Annual Report – *Overview, pg.1 and Consolidated Balance Sheet, pgs. F4-F7.*

Standards Act on a regular basis.  This system, designed, implemented, and managed by DISH is based upon intentional misclassification and aggressive chargebacks against the satellite technicians. The DISH fulfillment system unlawfully allows DISH to: 1) offload its business risks onto its employees; 2) offload its business expenses onto its employees; 3) offload its tax obligations onto its employees; 4) offload its potential liabilities onto its employees; and 5) exploit a piece-rate payment scheme to require numerous and significant tasks to be completed by its employees without compensation.

The piece rate business model to compensate telecommunications technicians has been under attack in various jurisdictions.[2] However, DISH has apparently made a business decision that the revenues saved by the unlawful scheme, are worth the risks associated with continuing the scheme.  In order to further this corporate decision, DISH engages in a company-wide system of purposeful misclassification of employee technicians, aggressive entity manipulation of alleged subcontractors, and the unilateral exploitation of employee technicians pay, before, during, and after they complete their work. Often, DISH uses underfunded entities or captive entities to try and circumvent their obligations under the FLSA.  When confronted with the litigation, too often, the captive "subcontractor" entity disappears or goes bankrupt and emerges with a new name.  This manipulation of the labels, but not the economic reality, does not defeat FLSA claims.[3]  Plaintiffs are hopeful that their action can help put a stop to the unlawful scheme and provide some level of redress to the satellite technicians who have been exploited for years.

Plaintiffs allege in their Complaint that DISH is an employer of the technicians both

---

[2] *Joiner v. Groupware Intern., Inc.* 2010 WL 2136533, 1 (M.D.Fla.) (M.D.Fla.,2010); *Phelps v. MC Communications, Inc.* 2011 WL 3298414, 8 (D.Nev.,2011); *Meseck v. TAK Communications, Inc.*, 2011 WL 1190579, 6 (D.Minn., 2011); *Kautsch v. Premier Communications*, 504 F. Supp 2d 685 (W.D. Mo. Jan. 23, 2007); Putnam v. Galaxy 1 Marketing, Inc., 2011 WL 4072388, 11 (S.D. Iowa, 2011) – to name a few.
[3] As said by the United States Supreme Court in *Goldberg v. Whitaker House Co-op.*, 366 U.S. 28, 33, (1961), 81 S.Ct. 933, 936, 6 L.Ed.2d 100, 103: "`economic reality' rather than `technical concepts' is * * * the test of employment." "The determination of the employment relationship does not depend" upon "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 1331 U.S. 722, 730 (1947).

individually, as a successor in interest, and as a joint employer. The Gibson Plaintiffs previously filed a Motion for Conditional Certification in the action styled *Gibson, et al. v Integrated Electronic Technologies, et al., 1:11-cv-583, (S.D. Ala, Mobile Division).* That Motion was limited to a collective action against Integrated Electronic Technologies, Inc. ("IET"). By order of this Court, that matter was consolidated with *Dale Robert White et al. v. Integrated Electronics Technologies, Inc., 2:11-cv-02186-SSV-J, (E.D. La. 2011)* (current caption for case at bar). The plaintiffs technicians from both actions now consolidated, join together to seek conditional certification of their Collective Action versus Dish and Integrated Electronic Technologies, Inc. ("IET").

The Plaintiffs request furthers the goals of judicial efficiency. When the two matters were consolidated, the Plaintiffs in *Gibson* had filed a Motion for Conditional Certification against IET. The Plaintiffs in *White* had not yet filed their Motion for Conditional Certification. Now that the matters have been consolidated, based in part upon the claims of the technicians being similar, and that the technicians are similarly situated, a consolidated Motion for Certification against both of the Defendants is the most efficient path forward. It would be unfair to the parties and to the Court to have multiple collective actions proceeding simultaneously when the claims of the technicians are all amenable to proceeding in a single collective action. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

As such, Dale White, Ban Murray, and Steven H. Baker, on behalf of themselves and all others similarly situated, request the entry of an Order for conditional certification of this collective action and notice to all current and former piece rate paid satellite technicians, regardless of their classification as employee or independent contractor, who performed Dish

Network work orders through IET and/or any of its alleged subcontractors, throughout the United States during the three-year period before the filing of this Complaint.

The collective action is against IET and DISH, individually, as joint employers, and as successors in interest.

### PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AS A COLLECTIVE ACTION

**A.      Summary of Argument and Relief Requested**

Section 216(b) of the Fair Labor Standards Act ("FLSA") provides that an action to recover unpaid minimum wages or unpaid overtime compensation may be maintained against any employer by employees for and on behalf of themselves and other employees similarly situated.  *See* 29 U.S.C. § 216(b).

While the FLSA permits an employer to pay its employees by "piece rate," the Act also requires the employer to compensate its employees for all of their hours worked at the minimum wage and pay one and one-half the regular rate of pay for overtime hours.  The law requires employers to convert the piece rate to a regular rate of pay. If the rate falls below minimum wage, the employer must make up the difference for the first 40 hours. If employees work more than 40 hours in a work week, the employer must pay them the overtime premium. IET and DISH violated both the minimum wage and overtime laws.

As stated in Plaintiffs' Original Complaint, (*See* Document No. 1, Plaintiffs' Original Complaint – Collective Action and Jury Demand), Plaintiffs are satellite installation technicians who worked for the benefit and profit of IET and DISH. Defendants paid Plaintiffs on a piece rate basis depending on the type of work or install performed without any additional compensation for overtime hours worked.  Plaintiffs worked so many hours that for certain weeks the piece rate compensation plan did not even amount to the federally mandated minimum

wage rate.

Defendants improperly classified one group of Plaintiffs as independent contractors. Defendants classified a second group of workers as employees. The named representatives include members from both groups. Ironically, the satellite technicians whom the Defendants classified as W2 employees performed the same work under the same conditions and pay structure as those the Defendants misclassified as 1099 independent contractors. Satellite technicians classified as employees, such as Plaintiff Steven H. Baker, were likewise denied their overtime pay and minimum wage pursuant to the Defendants' globally applied piece rate pay structure. Therefore, Plaintiffs are authorized by the FLSA to sue on their own behalf and on behalf of other employees similarly situated, regardless of Defendants' classification of such satellite installers as employees or independent contractors.

Plaintiffs have personal knowledge that their claims are similar to the claims of other current and former satellite technicians who worked for Defendants at any time within the last three years. The pay violation derives from a unified corporate policy, regardless of geography and regional management. Indeed, the four class representatives reside and work for Defendant across multiple regions in two different states. They have personal knowledge that IET's practice is applied across the board. Plaintiffs believe there are well over 150 potential class members during the relevant time period.

Plaintiffs respectfully request that the Court permit notice to all current and former piece rate paid satellite technicians, regardless of their classification as employee or independent contractor, who performed Dish Network work orders through IET and/or any of its alleged subcontractors, throughout the United States during the three-year period before the filing of this Complaint.

5

**B.      Plaintiffs seek conditional certification of a *collective* action, not a *class* action.**

Plaintiffs seek conditional certification and court-facilitated notice in this collective action pursuant to section 216(b) of the FLSA. *See* 29 U.S.C. § 216(b).  Unlike a Rule 23 class, which binds all the class members, conditional certification under section 216(b) requires similarly situated employees to affirmatively opt into the litigation.  A collective action is thus "a fundamentally different creature than the Rule 23 class action" because "the existence of a collective action under § 216(b) [depends] on the active participation of other plaintiffs." *Cameron-Grant*, 347 F.3d at 1249; see also *La Chapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) (describing the "fundamental, irreconcilable difference" between a Rule 23 class action and a collective action under 29 U.S.C. § 216(b)).  The FLSA collective action mechanism allows for efficient adjudication of similar claims so that "similarly situated" employees, whose claims are often small, may join together and pool their resources to prosecute their claims.  *See Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 170 (1989).

A collective action is defined by three important features: first, in order to participate in a collective action, an employee must "opt in," meaning the employee must consent in writing to join the suit and the consent must be filed with the court. *Id.* at 168.  Second, the statute of limitations runs on each employee's claim until that individual files a consent form, unless the statute is tolled.  *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996).  Third, to serve the "broad remedial purpose" of the FLSA, courts may order notice to other potential similarly situated employees to inform them of this opportunity to opt into the case.  *Hoffmann-La Roche*, 493 at 165.  Judicial notice avoids a "multiplicity of duplicative suits," allows the courts to set deadlines to advance the disposition of an action, and it protects potential plaintiffs' claims from expiring under the statute of limitations.  *Hoffmann-La Roche*, 493 U.S. at 171-73.

Conditional certification and judicial notice are appropriate here because Plaintiffs satisfy the lenient standard for demonstrating that they are "similarly situated" to the putative class.

## C.     The Fifth Circuit and Courts in this District Apply a Two-Stage Certification Process.

The Fifth Circuit and courts in this District have adopted a two-stage approach to determine whether a case should be certified as a collective action. *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp.2d 567, 569 (E.D.La. 2008) (conditional certification is the majority approach); *Basco v. Wal-Mart Stores Inc.*, No. Civ. A. 00-3184, 2004 WL 1497709 at *4 (E.D.La. July 2, 2004) ("the two-step ad hoc approach is the preferred method for making the similarly situated analysis"). The first stage in determining if a collective action should be certified is the "notice stage." At this stage, the court decides, based on pleadings and any affidavits submitted by Plaintiffs, whether other employees are similarly situated and should be notified. *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).

This *Lusardi* approach is routinely used by Courts in this District, and "typically results in conditional certification of a representative class." *Melson v. Directech Southwest, Inc.*, 2008 U.S. Dist. LEXIS 48525, 8 (E.D. La. 2008). Under *Lusardi,* to achieve conditional certification, plaintiffs must come forward with "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Donohue v. Francis Services, Inc.*, CIV.A. 04-170, 2004 WL 1161366 at 1 (E.D. La. May 24, 2004) (allegations of lack of overtime pay and improper classification of base pay as bonuses was sufficient for conditional certification, even though class definition included individuals in various locations and positions). At this initial stage, courts in this District have found that a "plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly

situated person may exist." *Fernandes da Silva v. M2/Royal Const. of Louisiana, LLC*, 2009 U.S. Dist. LEXIS 100692, 13 (E.D. La. 2009).

"Similarly situated does not mean identically situated." *Melson,* 2008 U.S. Dist. LEXIS 48525 at 10. In *Melson*, a group of satellite installation technicians met the requirements for conditional certification of a collective action by presenting affidavits stating that they worked over forty hours per week without receiving overtime pay. *Id*. at 11-12. The court noted that conditional certification is appropriate unless "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Id*. at 10-11. Likewise, because the wage and hour violations at issue here are generally applicable to the putative class, conditional certification is appropriate.

At the second stage, after discovery is completed, (if an employer files a motion for decertification) the court undertakes a more stringent factual determination as to whether members of the collective class are, in fact, similarly situated.  If it becomes apparent that Plaintiffs and others are not similarly situated, the court may "de-certify" the collective and dismiss the claims of the opt-in plaintiffs without prejudice.

**D.     Plaintiffs' burden at the first stage is lenient**

Plaintiffs bear the burden of demonstrating that potential opt-in Plaintiffs are "similarly situated."  This burden, however, is very low.  At the "notice stage," a court determines whether notice should be given to potential members of the collective action, "usually based only on the pleadings and any affidavits." Because the court has little evidence at this stage, "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class. *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).

Plaintiffs have demonstrated substantial allegations of the existence of a company-wide piece-rate policy that violates the FLSA. A class of similarly situated satellite technicians has been established through the pleadings, the declarations, and affirmed by the limited discovery conducted to date.

The claims of the technicians are inherently suitable to collective action under the FLSA and similar claims are routinely certified at this stage. *See, e.g., Lang v. DirecTV, Inc.*, 735 F. Supp. 2d 421, 435 (E.D. La. 2010) (*citing Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)). The putative members of the collective actions are entitled to a prompt opportunity to join this litigation without further and unnecessary loss of significant claims. Unlike Rule 23 class actions, the putative members of the collective action claims are prescribing until they are given an opportunity to opt in to this litigation.  Delay in certification causes them direct and irreparable harm.

**E.     Statement of facts relevant to the lenient conditional certification standard.**

Plaintiffs worked more than forty hours in a workweek as satellite technicians for the Defendants.[4]  In fact, Plaintiffs worked well over 60 hours per week on average.[5] Plaintiffs are non-exempt employees that work on a piece rate basis installing DISH satellites and other services provided by Defendants.[6]  That is, Defendants paid Plaintiffs a pre-determined fee for each service provided to customers regardless of the amount of time spent doing the work.[7] Furthermore, Defendants reduced Plaintiffs' pay for such things as the use of uniforms, hand-held devices, computer tablets, various tools, and if an installation was performed incorrectly,

---

[4] *See* Exhibits 2, 3, and 4; Declarations of, Dale Robert White, Ban Murray  and Steven H. Baker, respectively.
[5] *See* Exhibits 2, 3, and 4; Declarations of, Dale Robert White, Ban Murray  and Steven H. Baker, respectively.
[6] *See* Exhibits 2, 3, and 4; Declarations of, Dale Robert White, Ban Murray  and Steven H. Baker, respectively. Exhibit 5; Defendants' Piece rate pay scale, Exhibit 6; contractor weekly summary sheet.
[7] *See* Exhibits 2, 3, and 4; Declarations of, Dale Robert White, Ban Murray  and Steven H. Baker, respectively, Exhibit 5; Defendants' Piece rate pay scale, Exhibit 6; contractor weekly summary sheet.

Defendants reduced their pay and classified such reductions as "charge backs."[8]   Finally, Defendants also failed to pay Plaintiffs for time spent traveling between jobs and from equipment warehouses to the first job of the day.[9]

As a result of Defendants' compensation policy for its satellite technicians, Plaintiffs were not paid the correct overtime rate required under the FLSA.  Moreover, Plaintiffs were also not compensated at the FLSA required minimum wage.  Defendants likewise failed to pay overtime and/or minimum wage to other similarly situated workers throughout the United States.[10]

Defendant IET is an Alabama corporation.  It has offices located throughout the south eastern United States including Mobile, Alabama, New Orleans, Louisiana, Gulf Port, Mississippi, and Pennsacola, Florida. DISH provides its satellite services to customers nationwide.[11]

DISH contracted with IET to have IET's employees install and service satellite equipment for its customers throughout the south eastern United States.  The named Plaintiffs in this lawsuit were employed by Defendants as satellite technicians.   Plaintiff Robert Dale White worked for the Defendants during the years 2009-2011. He performed Dish work orders in Mississippi and Louisiana.  Defendants improperly classified him as an independent contractor. Plaintiff Ban Murray worked for the Defendants during  2011.  He performed Dish work orders in  Mississippi and Louisiana.   Defendants  improperly  classified  him  as  an  independent contractor.  Plaintiff Steven H. Baker worked for Defendants in Mississippi and Louisiana from approximately August 2008 to approximately December 2008 and then again from February

---

[8] *See* Exhibits 2, 3, and 4;Dale Robert White, Ban Murray  and Steven H. Baker, respectively., Exhibit 5; Defendants' Piece rate pay scale, Exhibit 6; contractor weekly summary sheet.
[9] *See* Exhibits 2, 3, and 4; Declarations of, Dale Robert White, Ban Murray  and Steven H. Baker, respectively.
[10] *See* Exhibits 2, 3, and 4; Declarations of, Dale Robert White, Ban Murray  and Steven H. Baker, respectively.
[11] *See* Exhibit 14; IET website company information.

2009 to May 2009.[12]  During the first work period, Defendants classified him as a W-2 employee and paid him a piece rate as described above.  During the second work period Defendants misclassified him as an independent contractor and paid him a piece rate as described above.[13]

Defendants hired and fired, issued pay, supervised, directed, disciplined, scheduled and performed all other duties generally associated with that of an employer with regard to the Plaintiffs and Class Members.[14]  In addition, Defendants instructed Plaintiffs and Class Members about when, where, and how they were to perform their work.[15]

Defendants' controlled Plaintiffs' work the way most employers control their employees' work. The following are examples of such control:

1. Defendants required technicians to call one of their representatives upon arrival to and departure from each job.  (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray and Steven H. Baker, respectively).

2. Defendants required Plaintiffs and Class Members to purchase from it tools and materials to be used specifically for the installation of DISH equipment.  DISH preapproved such tools and materials. (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray and Steven H. Baker, respectively, Exhibit 7; Defendants' expense form for supplies and materials).

3. Defendants required technicians to turn in payroll reports. (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray, and Steven H. Baker, respectively).

4. Defendants issued work schedules to the technicians (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray, and Steven H. Baker, respectively, Exhibit 8; Work Schedule issued by Defendants).

5. Defendants provided on-the-job training to the technicians instructing them precisely how to perform each task (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray , and Steven H. Baker, respectively).

6. Defendants required that equipment used on their jobs be obtained from IET warehouses (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban

---

[12] *See* Exhibit 4; Declaration of Steven H. Baker.
[13] *See* Exhibits 2,3 and 4; Declaration of Dale Robert White, Ban Murray  and Steven H. Baker, respectively..
[14] *See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray , Steven H. Baker, respectively.
[15] *See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray , and Steven H. Baker, respectively.

Murray and Steven H. Baker, respectively, Exhibit 7; Expense form for supplies and materials).

7.  Defendants restrict the ability of the technicians to work for other cable or satellite companies (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray and Steven H. Baker, respectively).

8.  Defendants assigned the technicians so many work hours per week that, as a practical matter, they were prevented from working for any other company (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray and Steven H. Baker, respectively, Exhibit 8; Work Schedule).

9.  Defendants financially penalize technicians for "call backs" from customers who request additional service related to defective equipment even though such equipment was installed correctly. The "charge back" scheme is administered jointly by both DISH and IET (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray , and Steven H. Baker, respectively, Exhibit 5; Piece rate pay scale and charge back list, Exhibit 6; calculation of pay subject to charge backs; Exhibit 19, Piece rate pay scale and charge back list).

10. Defendants required technicians to work more than 40 hours per week and typically the technicians worked more than 60 hours per week (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray and Steven H. Baker, respectively).

11. Plaintiffs and Class Members' services were integrated into Defendant's operations.

12. Plaintiffs and Class Members were required to perform their work in an order set by Defendants (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray , and Steven H. Baker, respectively, Exhibit 9, Defendants' work order).

13. Defendants required Plaintiffs and Class Members to attend company meetings (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray and Steven H. Baker, respectively).

14. Defendants required the Plaintiffs and Class Members to work on the weekends (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray and Steven H. Baker, respectively).

15. Defendants required technicians to report to a central location early in the morning on every workday in order to receive assignments prior to appearing at their first assignment of the day at a specified time period (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray and Steven H. Baker, respectively).

16. Defendants maintained the right to discharge Plaintiffs and Class Members at will (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray and Steven H. Baker, respectively).

17. Plaintiffs and Class Members were dispatched by Defendants to the various homes to install DISH's satellite service and equipment (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray, and Steven H. Baker, respectively, Exhibit 9; Defendants' work order).

18. Plaintiffs and Class Members wore DISH uniforms at Defendants' request (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray and Steven H. Baker, respectively, Exhibit 12; Plaintiffs' work uniforms).

19. Plaintiffs and Class Members drove in trucks with the name "DISH Network" placed on them (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray and Steven H. Baker, respectively, Exhibit 13; Defendants' logos on Plaintiffs' vehicles).

20. IET and DISH provided Plaintiffs and Class Members with a list of residences requiring satellite installation services (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray, and Steven H. Baker, respectively, Exhibit 9; work order referencing residences where work is to be performed).

21. Defendants determined which jobs would be performed in the morning and in the afternoon (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray and Steven H. Baker, respectively).

22. Defendants would then specify the order of completion for the morning jobs and the order of completion for the afternoon jobs (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray and Steven H. Baker, respectively).

23. Defendants would pay bonuses for employee referrals to Plaintiffs *See* Exhibit 11).

24. Defendants provided Plaintiffs with a Q&A inspection list concerning work done by Plaintiffs at customer's residence (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray and Steven H. Baker, respectively, Exhibit 10; DISH Q&A Inspection form).

25. Defendants maintained communication with Plaintiffs and Class Members and received updates as to the status of their work (*See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray, and Steven H. Baker, respectively).

This case is in its inception without little discovery conducted between the parties, yet the

13

overwhelming evidence supports the employee status of the satellite technicians.  Despite these

facts, Defendants improperly classified Plaintiffs and Class Members as independent contractors.

Ironically, the satellite technicians whom Defendants classified as employees performed the

same work under the same conditions and pay structure as those classified as contractors.  That

is, even satellite technicians classified as employees, such as Steven H. Baker, were likewise

denied their overtime pay and minimum wage due to the piece rate pay structure.  The

independent contractor label was a ruse to deny Plaintiffs and Class Members overtime pay and

pay at the minimum wage rate and other employee benefits.

**F.**     **Plaintiffs and putative Class Members are "similarly situated" with respect to their job requirements.**

All named Plaintiffs and the putative class members worked for Defendants as satellite

technicians.  Not only did the Plaintiffs and putative class members share the same job title, but

they performed the same work.  The "similarly situated" requirement does not mean "identical."

However, these satellite workers in fact performed identical work under the identical pay

scheme.

All of the Defendants' satellite technicians, regardless of their classification as a

contractor or employee, have the same job duties and responsibilities:  to install and/or repair

DISH satellite services and equipment.  All satellite technicians were required to report to a

warehouse in the morning to obtain their work orders and instructions for the day.  Furthermore,

all satellite technicians were required to be at the customer's home by a particular time.  When

arriving and departing a customer's home, all satellite technicians were required to contact

Defendants and remotely log-in work information into Defendants' computer system.

While out on the field, all satellite technicians were required to perform their work

according to the work orders issued to them by Defendants.  The work performed by the satellite

technicians was to be done according to Defendants' quality guidelines. All satellite technicians were required to stay with the customer after completing their work to educate the client as to their Dish Network satellite. Finally, all satellite technicians were required to purchase and use Defendants' approved materials and supplies for the install, service or repair of DISH equipment.

**G.     Plaintiffs and Putative Class Members are 'similarly situated' with respect to how they were paid.**

All satellite technicians were subject to the same pay violation: piece rate pay regardless of the hours worked with no additional compensation for overtime worked and no adjustments up when the effective rate fell below minimum wage. Moreover, all satellite technicians were subject to "charge backs" and were not compensated for travel time and "unproductive work" time.[16] As such, the Plaintiffs and Class Members were denied wages under an identical pay policy enforced by Defendants throughout all of its locations nationwide.

Under a "piece rate" compensation plan, satellite technicians were paid according to the type of work performed. Their pay was not based on the number of hours that it took to complete a task. Defendants' classification of the satellite technicians as employees or contractors did not change the method of payment of overtime.[17] That is, the violation remained the same as to all satellite technicians. Furthermore, all satellite technicians were subject to "charge backs" and financial penalties for failing to show up at a customer's home by a set time, because of incorrectly installed equipment, customer complaints, or failure to follow company policy.

**H.     Defendants' "Piece Rate" System is a Violation of the Fair Labor Standards Act**

To be sure, the FLSA permits employers to pay on a piece rate system under certain circumstances. *See* 29 U.S.C. § 207(g). That system is typically used where the employee's job

---

[16] *See* Exhibits 2, 3, and 4; Declarations of Dale Robert White, Ban Murray, and Steven H. Baker, respectively.
[17] *See* Exhibit 2, 3 & 4; Declarations of Dale Robert White, Ban Murray, and Steven H. Baker.

is routine in nature and easily quantifiable by looking to the number of "pieces" handled by the employee on a given day. But when an employee's job requires him to perform a variety of tasks, an employer is not permitted to pay for only some of those tasks. *See* 29 C.F.R. § 778.318.

This is true even if the employee agrees to such a system: "Some agreements provide for payment only for the hours spent in productive work . . . Payment pursuant to such an agreement will not comply with the Act[.]" 29 C.F.R. § 778.318(a). "[N]onproductive working hours must be counted and paid for." *Id.* Here, Defendants only pay technicians for their "productive" time, *i.e.*, time spent performing enumerated tasks. Technicians are not paid for other "nonproductive" tasks such as picking up equipment or traveling between job sites. *See* Buckley Dec. 6 *See, e.g., Stephan, et al., v. Michigan Microtech, Inc., et al.*, No. 2008-12136 (E.D. Mich.); *Davis v. JBM, Inc., et al.*, No. 2008-00642 (S.D. Ohio); *Laichev, et al. v. JBM, Inc.*, No. 2007-007802 (S.D. Ohio); *Espenscheid v. DirectSat USA, LLC, Unitek USA, LLC*, no. 2009-625 (W.D. Wis.); *Gruchy v. DirecTech, Inc., et al.*, 2008-10755 (D. Mass.). 7 *See, e.g., NAACP v. Donovan*, 558 F. Supp. 218 (D.D. C. 1982) ("agricultural employers such as the apple growers in this case often pay workers by the piece (e.g., by the bushel) rather than by the hour."); *Wirtz v. Wrightenberry*, 218 F. Supp. 404, 406-07 (M.D. N.D. 1963) (workers paid by number of hoses sewed); *Tobin v. Cherry River Boom & Lumber Co.*, 102 F. Supp. 763 (S.D. W.Va. 1952) (loggers paid at specific rates per 1,000 log feet). That system – which is employed across the country – flagrantly violates the FLSA and is a sufficient basis for conditional certification.

I.     **Even if merits were considered at this initial notice stage, conditional certification is proper because Defendants' misclassified the Plaintiffs and putative Class Members as independent contractors.**

In anticipation of Defendants arguing the merits of the case, Plaintiffs address the strength of their argument that they were misclassified as independent contractors even without

the aid of discovery.  The Supreme Court has explained that courts must determine whether, as a matter of "economic reality," an individual is an employee or an independent contractor in business for himself.  *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947).  Several factors guide this inquiry:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
>
> (4) whether the service rendered requires a special skill;
>
> (5) the degree of permanency and duration of the working relationship; and
>
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir.1987). "No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor-economic dependence." *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir.1976).[18]

Here, it is clear that Plaintiffs were not independent contractors.  But regardless of the final decision on the merits, the facts controlling the decision are similar if not identical for all technicians.  Regardless of a satellite technicians' classification or work location, they performed the same work, were paid the same way and were subject to the same control by Defendants.[19] Defendants exerted direct control over all aspects of Plaintiffs' employment. Defendants

---

[18] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[19] *See* Exhibit 4; Declaration of Steven H. Baker – satellite technician classified as a W2 employee, doing the same work as those classified as 1099 workers and subject to the same FLSA violation described in this lawsuit.

managed Plaintiffs' work day from start to finish, Defendants created the work schedules, Defendants decided what jobs had to be performed on a particular day and in what order, Defendants determined what materials were to be used and how it was that they were to interact with customers, and Defendants required Plaintiffs to wear its uniforms and drive vehicles with their company logos affixed on its sides.  Furthermore, Plaintiffs were unable to work for other satellite companies due to the large number of hours they worked each for IET and DISH. Finally, Plaintiffs were not temporary or seasonal employees. Plaintiffs worked for lengthy periods of time for Defendants.

This is not a close call.  All of Defendants' satellite technicians were employees regardless of their classification of contractor or employee.  Yet, this final determination is not before the court. The only issue is whether the plaintiffs and class members are similarly situated, which they clearly are.   At a minimum, Plaintiffs have satisfied the lenient standard for notice.

**J.       Other Putative Class Members are interested.**

Currently, ten (10)satellite technicians have joined this lawsuit.  Plaintiffs know of others who are also interested in joining this lawsuit, but have yet to join because of their fear of suffering retaliation from their employers.

Dale Robert White, Ban Todd Murray and James Miller filed an FLSA claim on August 31, 2011 in the United States District Court Eastern District of Louisiana. (*See* Exhibit 15).  The *White* plaintiffs also are aware of other satellite technicians subject to Defendants' piece rate compensation plan who wish to come forward for unpaid wages. (*See* Exhibit  2 and 3).

**K.       Satellite and Cable technician cases are routinely certified under the FLSA.**

Plaintiffs are not the first group of cable and satellite installers to challenge the piece rate pay practice and improper classification as independent contractors.  This area of the FLSA is well traversed, yet the industry as a whole continues to violate the law. As early as 2006, cable installers filed an FLSA complaint claiming they did not receive proper overtime compensation. *See Kautsch v. Premier Communications,* 504 F.Supp.2d 685 (W.D.Mo. Jan.23, 2007). The court considered a motion for conditional class certification of similarly situated field technicians that installed television services and were compensated under a piece-rate system. *Id.* at 687-89. The court explicitly noted as follows: "No two technicians have identical circumstances.  Some work longer hours than others. Some take longer to complete a job than others." *Id.* at 687.  However, the court stated that, "[d]espite these differences," the employer was required to comply with the FLSA in the company-wide piece-rate compensation scheme. *Id.* The court found that Plaintiffs had met the "lenient notice standard" by presenting a "modest factual showing" that the putative class members are similarly situated, and conditionally certified the class and authorized judicial notice. *Id.* at 690.

Since *Kautsch*, numerous other courts have followed suit.  For example, in *Balarezo v. NTH Connect Telecom, Incorporated,* No. 07-5243, 2008 WL 552474 (N.D.Cal. May 2, 2008), the court conditionally certified a case that is strikingly similar to this case.  Like the Plaintiffs here, the technicians in *Balarezo* installed cable equipment for customers of Comcast and were paid on a piece rate basis. *Id.*  In support of their motion for notice, the **plaintiffs submitted three declarations** stating that they were paid a piece rate for each installation completed, and relied upon the deposition of defendants' supervisor who confirmed technicians were paid by piece. *Id*. at *2.  **The court found the evidence from four witnesses satisfied the lenient standard for conditional certification**. *Id.*

In *Monroe v. FTS USA, LLC,* 257 F.R.D. 634 (W.D.Tenn., 2009), cable installers claimed they were denied overtime pay due to the employer's piece rate compensation plan.  Notably, **all three representative plaintiffs worked at a single location**. Defendant argued that the 600 employees operated nine different markets, installed different products, and were governed by laws of different states.   However, the court rejected this argument because the employees alleged that they performed the same job functions installing, repairing, and upgrading cable services, and handled customer complaints while installing services, and that they were paid under same allegedly unlawful compensation plan over which employer had central control. **The court therefore conditionally certified the national class**. *Id.*  Just as important, at the close of discovery, the employer moved to decertify the matter.    *Monroe v. FTS USA, LLC,* 763 F.Supp.2d 979, 996 (W.D.Tenn., 2011). The court denied the motion finding that differences among Plaintiffs' individual claims do not predominate over the ways they are similar. *See Id.*

The following is a partial list of other cases that have been certified under facts virtually identical to the facts in this case:

- *Joiner v. Groupware Intern., Inc.* 2010 WL 2136533, 1 (M.D.Fla.) (M.D.Fla.,2010) (granting conditional certification and class notice to group of cable installers who were paid a piece rated based on five affidavits).

- *Phelps v. MC Communications, Inc.* 2011 WL 3298414, 8 (D.Nev.,2011)(granting class notice to group of cable installers and ordering Defendants to produce the names, addresses, telephone numbers, and **email addresses** of all cable, internet, or telephone service installers who were paid on a piece rate basis).

- *Meseck v. TAK Communications, Inc.*, 2011 WL 1190579, 6 (D.Minn., 2011)(granting class notice and certification to class of cable installers paid on both piece rate and hourly rate; court rejected defendant's argument that the independent contractor analysis requires too detailed review of facts, holding "Courts in this district and elsewhere consistently hold that such potential defenses and individualized inquiries should not prevent conditional certification at the notice stage and are more appropriately addressed through a decertification motion.")

- *Goudie v. Cable Communications, Inc.*, 2008 WL 4628394, 9 (D.Or., 2008)(conditionally certifying a class of cable installers paid a piece rate and/or minimum wage for employees in five different states, rejecting as premature defendants argument about the merits of each individual class member's claim)

- *Putnam v. Galaxy 1 Marketing, Inc.*, 2011 WL 4072388, 11 (S.D.Iowa, 2011)(Granting class notice to class of 500 satellite installers paid a piece rate and classified as independent contractors at fourteen different offices across eight states with different area managers).

- *Lang, et al. v. DirecTV, 10-1085, (E.D. La. 2010)* (Granting conditional certification to a nationwide class of satellite technicians who were paid a piece rate and classified as independent contractors).

**L.     The proposed notice is fair and adequate, and should be sent via regular mail and via email.**

A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170. Use of court-authorized notice also prevents "misleading communications." *Id.* at 172.

Plaintiffs' proposed court-approved notice (*see* Exhibit 16) to the potential opt-ins is "timely, accurate, and informative," as required. *Hoffmann-La Roche*, 493 U.S. at 172.  It provides notice of the pendency of the action and of the opportunity to opt in.  Plaintiffs' legal claims are accurately described.  Potential opt-ins are advised that they are not required to participate.  The notice provides clear instructions on how to opt-in and accurately states the prohibition against retaliation or discrimination for participation in the FLSA action.  *See* 29 U.S.C. § 215(a)(3); *Reich v. Davis*, 50 F.3d 962, 964 (11th Cir. 1995).

Plaintiffs propose that the notice and consent forms be mailed by first class mail **and by electronic mail** to all potential opt-ins for the entire three-year period before this lawsuit was

filed.[20]   Plaintiffs' counsel will oversee the mailing (both regular mail and electronic mail) of such notices and pay the up-front charges for same (postage, copying, etc.).   Those class members interested in participating would be required to file their consents with the Court within 60 days of the mailing.

Plaintiffs further request that the class members be given the option to execute their consent forms on line through an electronic signature service.   This service allows class members to sign their consent forms electronically by clicking on a link in an encrypted email designated only for that user, which in turn takes them to a website where they can review the document they are signing, click a box indicating they have read and understood the consent form and insert information such as their name and address.   (*See* Exhibit 18, Sample electronic signature service consent to join collective action).   Users are instantaneously provided with a PDF copy of the form they signed and a copy of the form is made accessible to Plaintiff's counsel who will in turn file same with the court, just as if such document had been received via regular mail. This case begs for such present-day methods of communication and transacting business given the technical nature of the class members' jobs. This would merely be an additional option for signing the consent form.   Finally, Plaintiffs' counsel propose that notice go out to the putative class members twice, both via mail and electronically: the first time within seven days of receiving the list of putative class members from Defendants and a second time 30 days after.

---

[20] Email notice is becoming the norm in FLSA cases where the class members have a technical background. This is particularly true in technician cases like this one. *See Phelps v. MC Communications*, Inc. 2011 WL 3298414, 6 (D.Nev.,2011) (The Court will permit Plaintiffs to email the notice to those employees for whom Defendants have email addresses, as well as send it by first class mail. Email is an efficient, reasonable, and low-cost supplemental form of notice, particularly where Defendants may lack current physical mailing address information for its former employees.); *Goudie v. Cable Communications, Inc.*, 2008 WL 4628044, 9 (D.Or.,2008)("The court concludes that the names, addresses, phone numbers, and e-mail addresses of technicians are sufficient to permit notice and communication with potential members of the putative collective action."); *Beall v. Tyler Technologies, Inc.*, 2009 WL 3064689, at *1 (E.D.Tex. 2009) (Court granted class notice via email.).

**M.      The proposed limited discovery is essential to ensure timely notice.**

Discovery of a mailing list and contact information for class members in a computer readable format is a necessary component of notice in collective actions.  Defendants should therefore be ordered to produce the names, all known addresses, all phone numbers (home, mobile, etc.), dates of birth, last four digits of each technician's social security number, all known email addresses (work and personal), and dates of employment for all the class members employed within three years preceding the filing of this action to the present.  All of the requested information is necessary, including dates of birth, to allow Plaintiffs sufficient information to confirm current addresses and/or to locate those persons who may have moved from their last known addresses.  Production of all known personal and business email addresses, and the last four digits of the social security number, is particularly important because such contact information does not change when a person moves.  Without this information, the notices are more likely to be returned due to outdated or inaccurate addresses.  This in turn will result in Plaintiffs requesting an extension of the opt-in period to accommodate those class members, thereby delaying the timely resolution of this matter.  In addition, providing phone numbers allows Plaintiffs to verify the accuracy of the list by contacting former employees to determine if they are aware of anyone who was subject to the same payroll practice but whose name was omitted from the list.

<u>**CONCLUSION**</u>

At this preliminary stage, Plaintiffs have come forward with a sufficient factual basis from which this Court can determine that similarly situated plaintiffs exist.  Thus, the Court should grant Plaintiffs' Motion and provide the following relief to Plaintiffs:

(1)     Conditionally certify this case a collective action under 29 U.S.C. § 216(b) with respect to all current and former piece rate paid satellite technicians, regardless of their classification as employee or independent contractor, who performed Dish Network work orders through IET and/or any of its alleged subcontractors, throughout the United States during the three-year period before the filing of this Complaint.

(2)     Authorize mailing of the proposed notice and consent forms (Exhibits 16 and 17) to all of Defendants' satellite technicians via regular mail and email;

(3)     That notice go out to the putative class members twice, both via mail and electronically: the first time within seven days of receiving the list of putative class members from Defendants and a second time 30 days after; and

(4)     Require Defendants to produce the names and all known addresses, phone numbers, dates of birth, last four digits of the social security number and the email addresses for all class members so that notice may be implemented.

Respectfully submitted,

/s/ Jesse B. Hearin, III
JESSE B. HEARIN, III (Bar No. 22422)
jbhearin@hearinllc.com
Hearin, LLC
1009 Carnation Street, Suite E
Slidell, LA 70460
Telephone: (985) 639-3377
Facsimile: (877) 821-8015

/s/ Galvin B. Kennedy
Galvin B. Kennedy
gkennedy@kennedyhodges.com
Texas State Bar No. 00796870
Kennedy Hodges, L.L.P.
711 W. Alabama St.
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

24

/s/ J. Douglas Sunseri
J. DOUGLAS SUNSERI (#19173)
NICAUD & SUNSERI, L.L.C.
A Group of Professional Law Corporations
3000 18th Street
Metairie, LA 70002
(504) 837-1304
ATTORNEYS FOR PLAINTIFFS & CLASS
MEMBERS

## CERTIFICATE OF SERVICE

This is to certify that on June 6, 2012 a true and correct copy of the foregoing Plaintiff's **MOTION FOR CONDITIONAL CERTIFICATION AS A COLLECTIVE ACTION** was served on the attorney listed below:

***Via Electronic Mail and ECF System: EM@Kullmanlaw.com***

Eric Miller
The Kullman Firm
4605 Bluebonnet Blvd., Ste. A
Baton Rouge, Louisiana 70809
Tel: (225) 906-4250

/s/ Jesse B. Hearin, III
Jesse B. Hearin, III