## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DALE ROBERT WHITE, et al.,**                                    **CIVIL ACTION**
     **Plaintiffs**


**VERSUS**                                                       **No. 11-2186**
                                                                 **C/W 12-359**
                                                                 **(REF: both cases)**


**INTEGRATED ELECTRONIC**                                        **SECTION "E"**
**TECHNOLOGIES, INC., et al.**
     **Defendants**

### ORDER AND REASONS

Before the Court is the motion for conditional certification of collective action under

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, filed by Plaintiffs, Dale R.

White ("White"), Ban T. Murray ("Murray"), and Steven H. Baker ("Baker") (collectively,

"Plaintiffs"), which they have submitted to the Court on behalf of themselves and all others

similarly situated.[1] Defendants, Integrated Electronic Technologies, Inc. ("IET") and DISH

---

[1] R. Doc. 48.  This is a consolidated matter and, unless otherwise indicated, all references to the record ("R. Doc. ___") refer to documents filed in the lead case, *White, et al. v. Integrated Electronic Technologies, Inc., et al.* (No. 11-2186) ("*White*"). *Gibson, et al. v. Integrated Electronic Technologies, Inc., et al.* (No. 12-359) ("*Gibson*"), was filed on October 11, 2011, in the U.S. District Court for the Southern District of Alabama.  *Gibson* was transferred to the Eastern District of Louisiana on February 6, 2012, and consolidated with *White* on February 16, 2012.
     Plaintiffs filed their complaint in *White* on August 31, 2011.  *See* R. Doc. 1.  The Court granted leave for Plaintiffs to file their first supplemental and amending complaint on November 15, 2011, which was filed in the record at R. Doc. 19.  The named plaintiffs in *White* are Dale R. White and Ban T. Murray.
     Plaintiffs filed their complaint in *Gibson* on October 11, 2011.  *See* No. 12-359, R. Doc. 1.  The named plaintiffs in *Gibson* are Tom W. Gibson, Joseph R. Everett, Kenneth Stevens, and Steven H. Baker.
     Plaintiffs in both cases are former IET satellite television technicians who performed satellite installation services for DISH customers.  In the instant consolidated motion for certification, Plaintiffs submit that "[i]t would be unfair to the parties and to the Court to have multiple collective actions proceeding simultaneously when the claims of the technicians are all amendable to proceeding in a single collective action."  R. Doc. 48-1 at p.3.  The Court agrees.

Network Service, LLC ("DISH") (together, "Defendants"), have filed a memorandum in opposition to Plaintiffs' motion.[2] Defendants have also filed a motion for leave to file a supplemental opposition, which the Court **GRANTS**.[3] For the following reasons, the Court **GRANTS** Plaintiffs' Motion for Conditional Certification as set forth below.

## *Background*

Plaintiffs are former IET satellite television technicians who performed customer installations, upgrades, and service calls for DISH customers. According to Plaintiffs, DISH is a major supplier of satellite television programming and services in the United States. Established in 1996, DISH serves approximately 14 million customers nationwide and had revenue totaling more than $14 billion in 2011.[4] IET contracts with DISH to install, maintain and repair satellite television service for DISH customers.[5] Plaintiffs allege that IET, with the knowledge, approval and acquiescence of DISH, purports to contract with many technicians as "independent contractors" – though these technicians are performing their jobs in the manner of employees – in order to avoid having to pay payroll taxes or provide worker's compensation insurance, health insurance, unemployment insurance, overtime, and other such benefits typically afforded to employees, in violation of the FLSA.[6]

---

[2] R. Doc. 54. At oral argument on August 15, 2012, the Court instructed the parties to file supplemental memoranda for the Court's consideration in conjunction with Plaintiffs' motion. *See* R. Docs. 59 and 60.

[3] R. Doc. 64.

[4] R. Doc. 48-1 at p. 1.

[5] IET is an Alabama corporation with offices located in Mobile, Alabama; New Orleans, Louisiana; Gulfport, Mississippi; and Pensacola, Florida.

[6] Plaintiffs allege that the technicians are paid pursuant to a "piece rate" pay structure, in that their compensation depends on the number of "pieces," or tasks, that a technician completes. The FLSA permits employers to compensate employees pursuant to a piece rate system under certain circumstances.

Because of the nature of the relationship between IET and DISH, Plaintiffs aver that IET and DISH are the technicians' joint employers.  In support of this assertion, Plaintiffs allege that technicians are required to report to a specific warehouse at a specified time every morning.  At the warehouses, technicians are provided with DISH work orders and instructions on how to fulfill these orders. Technicians wear DISH uniforms and drive vehicles marked with DISH logos.  Technicians receive DISH training materials detailing how installation or repair services should be performed, instructions on how technicians should interact with DISH customers, and help from DISH technical support staff. Plaintiffs further allege that after technicians have completed their orders, Defendants often illicitly "charge back" to the technician the cost of any requests for additional services, and do so even for issues that do not implicate the quality of technicians' installation services.[7]

In addition, the equipment used by the technicians to fulfill their orders must be purchased from a specific, approved warehouse, and IET informs each technician how much equipment will be needed to perform the jobs assigned on a given day.  Technicians must buy their tools and accessories for their work – such as screwdrivers, ladders, *etc.* – from these same warehouses and the cost of such items is deducted from their pay.

---

*See* 29 U.S.C. § 207(g).  Employers cannot use a piece rate system to avoid paying employees the Federal minimum wage or overtime.  *See* 29 C.F.R. §§ 778.111 and 778.318.  Plaintiffs submit that Defendants' piece rate compensation scheme does not satisfy such FLSA requirements because Defendants required the technicians to work so many hours that their effective hourly wage fell below the mandated minimum wage.  Plaintiffs also allege that Defendants fail to pay technicians for "unproductive time" and overtime.

[7] Defendants respond that "[c]harge backs are designed to ensure that the cost of poor workmanship is taxed to the faulty installer—the independent contractor—instead of IET. For example, if an installer is in a hurry and improperly installs a satellite dish, IET must send a second installer to the customer's house to repair the work for the first installer.  IET is not paid by DISH for the second call but must pay the second installer who repairs the mistake of the first installer.  The charge back system allows IET to recoup that loss from the first installer that improperly installed the satellite dish. As an independent installer, he has the opportunity for profit or loss based on his workmanship, skill, and efficiency. Such arrangements are typical in the independent contractor setting."  R. Doc. 54 at p. 5 (internal citations omitted).

Plaintiffs further contend that technicians work in excess of forty hours in a week. Typically, technicians work between 60 and 90 hours a week. No technicians receive overtime pay for the work performed beyond 40 hours a week. According to Plaintiffs, this impedes any opportunity for technicians to work for any other satellite television or cable television providers, and even if technicians had the time to do so, Defendants specifically prohibit them from working for competitors.

In summary, Plaintiffs allege that Defendants, as joint employers, have failed (1) to pay for all hours worked, (2) to pay overtime for hours worked over 40 hours in a given work week, (3) to pay for travel time to and from worksites, (4) to pay the legally-mandated minimum wage, (5) to pay for time spent in training sessions and other job essential functions, (6) to pay for "non-productive time," and (7) to reimburse technicians for expenses required to complete their assigned work orders. Plaintiffs further allege that Defendants (8) have failed to provide accurate wage statements, (9) have failed to keep records of hours worked and wages paid, (10) have unilaterally withheld compensation without adequate justification and due process, and (11) have retaliated against technicians for asserting their FLSA rights.

As a result, Plaintiffs seek to have this matter conditionally certified as a collective action pursuant to Section 216(b) of the FLSA with respect to all of IET's current and former piece rate satellite technicians who performed DISH work orders through IET for the three-year period preceding the filing of Plaintiffs' complaint, regardless of whether such technicians are or were classified as employees or independent contractors.[8] Plaintiffs

---

[8] R. Doc. 48-1 at p. 24. Plaintiffs clarified in their motion and at oral argument that the thrust of their allegations is that, due to the nature of Defendants' compensation plan, all technicians, regardless of whether they were classified as employees or misclassified as independent contractors, do not receive

anticipate that approximately 150 technicians – located in Alabama, Mississippi, and Louisiana – fall within this putative class.[9]

Plaintiffs request the Court to authorize the mailing of their proposed notice and consent forms to all such technicians, via first-class mail and e-mail, within seven (7) days of receipt of the list of putative technicians, and again for a second time thirty (30) days thereafter.  In addition, Plaintiffs seek to have Defendants produce the names, all known addresses, telephone numbers, dates of birth, e-mail addresses, and the last four Social Security number digits, for all putative class members in order to facilitate this notice process.

## Law and Analysis

### I.    The FLSA and Collective Action Status

Section 207(a) of the FLSA requires covered employers to compensate non-exempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours.  29 U.S.C. § 207(a); *Basco v. Wal-Mart Stores, Inc.*, 2004 WL 1497709 (E.D. La. July 2, 2004) (Duval, J.).  The FLSA also sets forth record-keeping requirements with respect to non-exempt employees. 29 C.F.R. § 516.1 *et seq.*  Under the FLSA, an employee may bring an action against an employer on "behalf of himself . . . and other employees similarly situated."   29 U.S.C. § 216(b).[10]   "A collective action affords plaintiffs 'the

overtime pay or pay for "non-productive" time.

[9] R. Doc. 48-1 at p. 5.  Though this is not clear from their motion, Plaintiffs clarified at oral argument that they seek to represent a regional class limited to IET technicians in Alabama, Mississippi, and Louisiana.  As a result, the Court need not address Defendants' alternative argument that the class – if the Court finds it appropriate to conditionally certify a class – should be limited to technicians in Alabama, Mississippi and Louisiana, because that argument is moot.  *See* R. Doc. 54 at pp. 15-16.

[10] In full, 29 U.S.C. § 216(b), provides:

advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact.' " *Johnson v. Big Lots Stores, Inc.*, 561 F.Supp.2d 567, 572 (E.D. La. 2008) (Vance, J.) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482 (1989). Unlike a Rule 23 class action brought in accordance with the Federal Rules of Civil Procedure and which binds all class members, a collective action under Section 216(b) requires similarly situated employees to affirmatively "opt in" to the litigation, rather than "opt out." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995) (overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148 (2003)); 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives

---

Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which (1) restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or section 207 of this title by an employer liable therefor under the provisions of this subsection or (2) legal or equitable relief is sought as a result of alleged violations of section 215(a)(3) of this title.

his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). The U.S. Supreme Court has recognized that federal district courts "have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffmann-La Roche*, 493 U.S. at 167.

The current task before the Court is to determine whether Plaintiffs have demonstrated that a putative class of "similarly situated" technicians exists, such that the Court should provide notice of this case to potential class members and provide them with an opportunity to "opt-in" to the case. Section 216(b) does not define "similarly situated." *Johnson*, 561 F.Supp.2d at 573. In *Mooney*, the U.S. Court of Appeals for the Fifth Circuit ("Fifth Circuit") recognized that courts have followed two approaches – one set forth in *Lusardi v. Zerox Corp.*, 122 F.R.D. 463 (D. N.J. 1988), and the other in *Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990) – when evaluating whether putative class members are "similarly situated" and whether notice should be given. *Basco*, 2004 WL 1497709, at *3. When the parties have engaged in limited discovery, federal district courts, including other sections of this Court, commonly apply the *Lusardi* approach. See *Williams v. Bally's Louisiana*, 2006 WL 1235904, at *2 (E.D. La. May 5, 2006) (Africk, J.) ("[A] consensus of courts apply a two-step analysis for conditional certification outlined in *Mooney*, 54 F.3d at 1213," that is, the *Lusardi* test.); *see also Johnson*, 561 F.Supp.2d at 573; *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F.Supp.2d 793 (E.D. La. 2007) (Fallon, J.); *Basco*, 2004 WL 1497709, at *4.

*Lusardi* provides for a two-step analysis. *Williams*, 2006 WL 1235904, at *2. The first step is the "notice stage," wherein the court is charged with deciding whether to issue notice to putative class members. *Melson v. Directech Southwest, Inc.*, 2008 WL 2598988,

at *3 (E.D. La. June 25, 2008) (Feldman, J.) (citing *Mooney*, 54 F.3d at 1213).  At the notice stage, the plaintiff bears the burden of making the preliminary factual showing that other similarly situated individuals exist such that the court should provide notice of the action to putative class members.  *Lima*, 493 F.Supp.2d at 798; *Villarreal v. St. Luke's Episcopal Hosp.*, 751 F.Supp.2d 902, 916 (S.D. Tex. 2010).  The plaintiff may satisfy this burden through submission of evidence in the form of pleadings, affidavits, or other supporting documentation. *Melson*, 2008 WL 2598988, at *3; *Lima*, 493 F.Supp.2d at 798. "At the notice stage, 'courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination.' " *Mooney*, 54 F.3d at 1214 n.8 (quoting *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D. N.J. 1988)).  " 'Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class' where potential class members receive notice and the opportunity to opt-in." *Melson*, 2008 WL 2598988, at *3 (quoting *Mooney*, 54 F.3d at 1214); *Williams*, 2006 WL 1235904, at *3; *Basco*, 2004 WL 1497709, at *3.  At the same time, while the burden is "lenient," certification is not automatic.  As another section of this Court has cautioned, "[g]iving too lenient an approach at the notice stage can lead to an employer being burdened by something that may be no more than a frivolous fishing expedition conducted by the plaintiff at the employer's expense."  *Clay v. Huntington Ingalls Inc.*, 2011 U.S. Dist. LEXIS 155351, at *14 (E.D. La. Sept. 29, 2011) (Zainey, J.) (internal quotation marks and citation omitted).

After a case has been conditionally certified, it proceeds through discovery as a collective action. *Williams*, 2006 WL 1235904, at *3 (citing *Mooney*, 54 F.3d at 1213-14;

*Basco*, 2004 WL 1497709, at *3).  Once discovery is largely complete, the defendant may file a motion for decertification and the court must apply the second step of *Lusardi*. *Williams*, 2006 WL 1235904, at *2 (citing *Mooney*, 54 F.3d at 1214; *Basco*, 2004 WL 1497709, at *3; *Donohue*, 2004 WL 1161366, at *2).  At that time, the court will have before it more information upon which to base its decision regarding whether class members are in fact similarly situated.  *Williams*, 2006 WL 1235904, at *2 (citing *Donohue*, 2004 WL 1161366, at *2).  If the court finds that the claimants are similarly situated, the case proceeds to trial as a collective action.  *Williams*, 2006 WL 1235904, at *2 (citing *Donohue*, 2004 WL 1161366, at *2).  If the court finds that the claimants are not similarly situated, the court decertifies the class and dismisses the opt-in plaintiffs without prejudice, and the original plaintiffs proceed to trial on their individual claims.  *Williams*, 2006 WL 1235904, at *2 (citing *Donohue*, 2004 WL 1161366, at *2).

In support of their motion for conditional certification, Plaintiffs have submitted documents detailing Defendants' business structure; photographs of the DISH uniforms that technicians are required to wear and the DISH logos required to be affixed to technicians' vehicles; and declarations, pursuant to 28 U.S.C. § 1746, from White, Murray, and Baker.[11]  The nearly-identical declarations provided by White, Murray and Baker set forth the facts Plaintiffs alleged in their pleadings as based on the declarants' personal knowledge.[12]  In essence, White, Murray and Baker swear that they are former IET technicians who provided services to DISH satellite television customers.  In doing so, they,

---

[11] R. Docs. 48-2 through 48-15.

[12] R. Docs. 48-3 through 48-5.  Defendants challenge Plaintiffs' declarations because they are unsigned.  R. Doc. 54 at p. 17.  At oral argument, the Court questioned Plaintiffs' counsel about the unsigned declarations and is satisfied with their authenticity.

like other IET technicians, pursuant to Defendants' policy or plan, regularly worked more than 40 hours per week and were paid pursuant to a piece rate payment scheme without any compensation for "unproductive time" or travel time.   Due to the numbers of hours worked and their effective rate of pay pursuant to Defendants' piece rate payment scheme, Plaintiffs were not compensated at or above the Federal minimum wage and were denied overtime pay.

In support of their assertion that Defendants are their joint employers, Plaintiffs submit that Defendants required technicians to report to a central location early every workday morning in order to provide them with their work assignments.   While fulfilling DISH orders, the technicians were required to call an IET representative upon arriving to, and departing from, each customer's residence.   Furthermore, they had to purchase DISH-approved materials and tools through IET's warehouse, were not permitted to work for DISH's competitors, and were required to wear DISH uniforms and to place DISH logos on their vehicles.   Defendants reserved the right to discharge them at will.   IET and DISH determined their schedules and assessed "charge backs" when customers requested additional service.   Finally, White, Baker and Murray state that they "know of other employees of IET who would join this lawsuit if it is treated as a collective action."[13] Plaintiffs contend they have provided a sufficient basis from which the Court can determine that IET and DISH, as the technicians' joint employers, pay the technicians pursuant to a policy or plan that violates the FLSA, that other similarly situated technicians exist and that these technicians are interested in joining this lawsuit if the Court certifies it as a collective

---

[13] R. Docs. 48-3 at p. 4, 48-4 at p.4, and 48-5 at p. 4.

action.

Defendants first respond that Plaintiffs are not "similarly situated" because, for the Court to determine whether Plaintiffs are "similarly situated," the Court must conduct an individualized analysis of their claims. In essence, Defendants assert that "[d]isputes over independent contractor misclassification are particularly inappropriate for certification as collective actions."[14] Plaintiffs agree that whether the technicians are employees or independent contractors depends on the "economic reality" of the business relationship. Nevertheless, Plaintiffs argue that Defendants' argument goes to the merits of the case and that, at this time, the Court is not faced with resolving the merits. Rather, Plaintiffs contend that only issue before the Court is whether they have satisfied the lenient standard necessary for notice to be provided to all putative class members.[15]

With respect to whether independent contractor-versus-employee disputes are appropriate for collective actions, the Court finds the reasoning of another section of this court – which was tasked with determining whether to conditionally certify a case also involving satellite television technicians – to be persuasive. *See Lang v. DirecTV, Inc.*, 2011 WL 6934607, at *3 (E.D. La. Dec. 30, 2011) (Brown, J.). In *Lang*, the plaintiffs were satellite television technicians who installed DirecTV systems in customers' homes. Plaintiffs alleged that the defendants – DirecTV, another major satellite television provider, and other entities with which DirecTV contracted to install and maintain its services – improperly misclassified them as independent contractors in order to circumvent FLSA

---

[14] R. Doc. 54 at p. 12.

[15] R. Doc. 48-1 at pp. 17-18.

minimum wage, overtime, retaliation and record-keeping requirements.[16]   In opposing plaintiffs' motion for conditional certification, the *Lang* defendants argued that "each individual [technician] had 'complete discretion over the manner and means' of performance and that the individual [technicians] employ their own support personnel, maintain their own payroll and employment records, and pay their own employees," – in sum, the technicians were employed in "typical subcontracting relationship[s]."  *Lang*, 2011 WL 6934607 , at *3.  The *Lang* Court concluded that it

> need not decide at this juncture the exact nature of the employment relationship here. As in other actions where threshold employment questions existed, Plaintiffs have alleged enough to satisfy the initial burden at this stage. The fact that questions remain about the employment status of DirecTV regarding the named plaintiffs and proposed class of plaintiffs will not stop this Court from considering the propriety of conditionally certifying the collective action. Although courts have later decertified actions because of employment relationship questions, this does not alter the present burden at the conditional certification stage considered here.

---

[16] Defendants' behavior complained of in *Lang* is strikingly similar to the facts before this Court. As set forth in *Lang*,

> Plaintiffs allege that Defendants failed to record or pay wages, or deducted wages, for time actually worked. Allegedly, Plaintiffs regularly worked over 40 hours per work week in order to complete their job assignments but did not receive overtime compensation or received compensation for fewer overtime hours than they worked or were compensated at an incorrect rate. These allegedly uncompensated hours include time worked before the first customer of the day, after the last customer of the day, travel time, and periods during which work was performed during meal time. Plaintiffs also allege a "charge-back scheme" in which Defendants improperly withheld sums from Plaintiffs' pay, resulting in Plaintiffs sometimes allegedly being charged more than they earned on a particular job. Additionally, Defendants allegedly "withheld uniform and tool costs from Plaintiffs' paychecks, failed to compensate Plaintiffs for accrued but unused vacation time and failed to properly pay Plaintiffs for fuel and mileage, and improperly 'charged' plaintiffs for the failures of defendants' equipment."

*Lang*, 2011 WL 6934607 , at *1 (footnote omitted).

*Lang*, 2011 WL 6934607 , at *3 (footnotes omitted).

The *Lang* Court's approach is also appropriate here given how analogous the facts of this case are to the facts of *Lang*.  Defendants may file a motion for decertification at the appropriate time after discovery has been completed.  The Court recognizes that Defendants may succeed in having this case decertified.  Nevertheless, the Court finds that Plaintiffs, at this time, have satisfied their lenient burden and have demonstrated "a reasonable basis for the allegation that a class of similarly situated persons may exist."  *Lima*, 493 F.Supp.2d at 798.  While the Court is mindful that it must guard against "fishing expeditions" at employers' expense, *Clay*, 2011 U.S. Dist. LEXIS 155351, at *14, the Court has concluded that Plaintiffs have presented allegations which make it appropriate for the Court to exercise its discretion to conditionally certify this matter as a collective action in order to provide notice to putative class members.  Moreover, Plaintiffs estimate that only approximately 150 technicians in Alabama, Mississippi, and Louisiana will fit within the parameters of the proposed class.  The Court concludes that "requiring individualized adjudication of each claim would undermine the broad remedial purposes of the FLSA, which affords plaintiffs 'the advantage of lower individual costs to vindicate rights by the pooling of resources' thereby benefitting the 'judicial system . . . by efficient resolution in one proceeding of common issues of law and fact.' " *West v. Lowes Home Centers, Inc.*, 2010 WL 5582941 (W.D. La. Dec. 16, 2010) (quoting *Hoffman–La Roche*, Inc., 493 U.S. at 170), *report and recommendation adopted by*, 2011 WL 126908 (W.D. La. Jan. 14, 2011).

Defendants respond that the Court should not rely on White, Murray, and Baker's declarations because, after Plaintiffs filed their motion for conditional certification, Defendants deposed Plaintiffs.  The technicians' sworn testimony in their depositions,

13

Defendants argue, substantially undercuts the facts presented in their declarations.[17]  As this Court previously noted at the oral argument hearing on Plaintiffs' motion, the Court is not required to consider deposition testimony in conjunction with a motion for conditional certification.  *See Mooney*, 54 F.3d at 1213-14 (noting that under the *Lusard* approach, a court's determination of whether notice should be given is usually made on the basis of "only . . . the pleadings and any affidavits which have been submitted").[18]  Out of an abundance of caution, the Court has reviewed the deposition excerpts and Defendants' memorandum outlining the differences between Plaintiffs' declarations and their deposition testimony, and will permit these documents to be filed into the record.[19]  However, the Court is not convinced that the excerpts of Plaintiffs' deposition testimony, as Defendants submit, contain "glaring factual misstatements or fraudulent testimony."[20]

Again, the Court finds *Lang* instructive.  The *Lang* defendants likewise sought to have the plaintiffs' declarations stricken from the record in an effort to dissuade the court from granting conditional certification.  Defendants argued that plaintiffs' "declarations should be stricken because the deposition testimony allegedly 'confirms that the Declarations do not contain facts of which they [the declarants] have personal knowledge, and in some cases, contain assertions which the plaintiffs now acknowledge are simply

---

[17] Defendants originally filed copies of the depositions without the Court's leave at 2:56 a.m. CDT prior to the oral argument hearing on this motion scheduled for 10:00 a.m.  *See* R. Doc. 57.  The Court did not consider the depositions at the hearing and struck them from the record because they were untimely and filed without leave.  *See* R. Doc. 58.  Defendants reurge the Court the consider the depositions.  *See* R. Doc. 64.

[18] *See* R. Doc. 58.

[19] R. Doc. 64.

[20] R. Doc. 64-1 at p. 2.

false.' " *Lang*, 2011 WL 6934607 , at *10 (footnote omitted).  The *Lang* Court noted that "simply because a declaration employs boilerplate language does not mean that the statements do not reflect personal knowledge.  There is no rule that requires plaintiffs to compose affidavits in their own words, without the assistance of counsel, and common declarations may be reasonable where there is great similarity."[21] *Lang*, 2011 WL 6934607, at *9.  Ultimately, the *Lang* Court concluded that "to the extent that these declarations exhibit deficiencies, striking them is a harsh remedy that is not mandated here, particularly given the light burden Plaintiffs must meet on a motion for conditional certification.  Rather, such questions go to the weight or credibility of the declarations — an inquiry more appropriate for a later stage in these proceedings. The declarations are sufficient to meet the 'minimal showing' required for conditional certification, and they need not be stricken." *Lang*, 2011 WL 6934607, at *10 (footnotes omitted).  Having considered the deposition excerpts and Defendants' memorandum *vis-à-vis* White, Murray and Baker's declarations, the Court concludes that Defendants' concerns go to the weight and credibility of the declarations, which the Court is not tasked with resolving at this time.  The Court is convinced that Plaintiffs' submissions in support of their motion satisfy the requisite "minimal showing" such that this matter may be certified as a collective action.  *Lang*, 2011 WL 6934607, at *10.

---

[21] *See also Santiago v. Amdocs, Inc.*, 2011 WL 6372348, at *7 (N.D. Cal. Dec. 19, 2011) ("Defendant raises a number of challenges to the credibility of various individuals who submitted declarations in support of plaintiffs' motion. . . . [C]ourts have repeatedly held that possible contradictions in testimony 'are matters of credibility for the factfinder, not individualized defenses' preventing collective treatment. *Pendelbury v. Starbucks Corp.*, 518 F.Supp.2d 1345, 1362 (S.D. Fla.2007) (holding inconsistencies in plaintiffs' and class members' testimony 'present issues of credibility and do not weigh heavily in favor of decertifying the class.'); *see also Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 180 (D. Conn. 2010) ('Indeed, at the conditional certification stage, the court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations.') (internal quotations omitted).").

Next, Defendants argue that there is no reasonable basis to conclude that other individuals want to opt-in to the lawsuit. Defendants specifically take issue with Plaintiffs' "boilerplate language" stating that other technicians will join this case if it is certified as a collective action.[22] The Court has reviewed the caselaw Defendants have cited in support of their argument that Plaintiffs' declarations are insufficient evidence to support conditional certification, and finds that, in the Fifth Circuit, there is no categorical rule that Plaintiffs must submit evidence at this time that other technicians seek to opt-in to this case. *See, e.g.*, *Simmons v. T-Mobile USA, Inc.*, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007) ("Various courts require proof of a third criterion for conditional certification, namely, that there be evidence that other similarly situated individuals wanted to opt in to the lawsuit. The Fifth Circuit has not addressed this factor, presumably because generally there are multiple plaintiffs or several current or former employees that seek to join the suit and provide affidavits in support of the conditional [c]ertification.") (citations omitted). Furthermore, the Court finds the reasoning on this issue in *Villarreal* to be persuasive. In *Villarreal*, the U.S. District Court for the Southern District of Texas held that "a plaintiff need not present evidence at this stage of the third element, that aggrieved individuals actually want to opt in to the lawsuit." *Villarreal*, 751 F.Supp.2d at 916. "There are several reasons for this," the court stated, including:

> First, . . . this element is not a statutory requirement at this stage. *See* 29 U.S.C. § 216(b). Second, this element has not been required, or even discussed, by any higher court opinion that this court has been able to find or to which the parties have cited. Rather, the Fifth Circuit's discussion of the *Lusardi* approach only requires, at the first stage, that "putative class

---

[22] R. Doc. 54 at p. 17 ("I know of other employees of IET who would join this lawsuit if it is treated as a collective action.").

members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *See Acevedo*, 600 F.3d at 519 (citing Mooney, 54 F.3d at 1213-14). Third, unlike under Rule 23, there is no numerosity requirement in a FLSA class action lawsuit under the Lusardi approach. *See, e.g., Badgett v. Tex. Taco Cabana, L.P.*, No. Civ.A.H 05-3624, 2006 WL 367872, at *2 (S.D.Tex. Feb. 14, 2006) (Lake, J.) (unpublished) (citing *Mooney*, 54 F.3d at 1214 & n.8) (stating that "at the notice stage [in a FLSA action using the *Lusardi* approach], courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" (internal quotations omitted)). Fourth, this element, requiring evidence of purported class members who are willing to join a class action before an appropriate class is even determined, is dissonant with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes. *See Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985). Liberally construing the FLSA to effect its purposes, the court finds that **it is enough for the plaintiff to present evidence that there *may* be other aggrieved** individuals to whom a class action notice should be sent, without requiring evidence that those individuals actually intend to join the lawsuit.

*Villarreal*, 751 F.Supp.2d at 916 (emphasis added).

In this consolidated matter, three named Plaintiffs – White, Murray and Baker – have submitted declarations, and at least three other technicians – William Arnold, William Arnold, Jr., and Helder Maia – have filed notices of consent to join the lawsuit.[23]  As discussed above, the Court, at this time, is satisfied the declarations contain the "minimal showing" necessary to support conditional certification.  The additional notices of consent

---

[23] The consent forms signed by William Arnold and William Arnold, Jr., are filed at R. Docs. 24-1 and 24-2 in *Gibson*, No. 12-359.  Helder Maia's consent form is filed at R. Doc. 51-2.

Defendants assert that Charles Mullins ("Mullins"), whose consent form filed at R. Doc. 51-1, has indicated that he wishes to withdraw as a plaintiff.  No motion to withdraw has been filed on Mullins' behalf.  Nevertheless, the Court has not considered Mullins' consent to join this matter as a plaintiff because it finds that Plaintiffs have satisfied their burden, such that the Court should provide notice to all putative class members, based on the declarations submitted by White, Murray, and Baker, and the consent forms of Arnold, Arnold, Jr., and Maia.

to join the lawsuit, when considered in conjunction with Plaintiffs' declarations, persuade the Court that there may be other technicians who should be notified of this case, and that providing notice to those technicians will effect the broad remedial purposes of the FLSA. *Lang*, 2011 WL 6934607 , at *8; *Villarreal*, 751 F.Supp.2d at 916.

Finally, Defendants argue that, if the Court finds it appropriate to certify this matter, only independent contractors, and not employees, should be included in the class.[24] Defendants assert that "the resolution of the independent contractor misclassifciation issue is completely unrelated and dissimilar to the issue of whether IET's employees were paid appropriately under the alleged piece rate plan."[25]   In response, Plaintiffs clarified at oral argument that their main complaint is that Defendants' piece rate compensation plan fails to pay *both* misclassified independent contractors, and technicians classified as employees, for overtime and for "non-productive" work they are required to perform.[26]   The Court can easily resolve whether Defendants require employees to work so many hours that their effective wage rate falls below the minimum wage, and whether employees are also denied overtime pay, in conjunction with the allegedly misclassified independent contractors' claims once discovery has been completed.   The Court will conditionally certify the class as Plaintiffs have proposed.

---

[24] As noted in *supra* n.23, Defendants highlight that Charles Mullins, an IET employee, has indicated he wishes to withdraw as a plaintiff.   Again, no motion to withdraw has been filed on Mullins' behalf.

[25] R. Doc. 54 at p. 16.

[26] Defendants acknowledge that technicians classified as employees are also compensated at the piece rate.  R. Doc. 54 at p. 16.

## II.     Form, Content and Timing of Notice to be Given

Plaintiffs have submitted a proposed notice form setting forth the scope of the litigation and informing putative class members of their rights, and the consent form that technicians may sign and return in order to opt-in to this case.[27]  Plaintiffs request that notice be provided to all technicians employed in the three years prior to the filing of Plaintiffs' complaint.  Plaintiffs further request that class members be afforded the option of executing their consent forms online through an electronic signature service.  Such service will allow class members to sign their consent forms electronically by clicking on a link in an encrypted e-mail designed only for that user, which in turn directs the user's web browser to a website where the user can review the document to be signed, click a box indicating he has read and understood the form, and insert his name and address.[28]

In addition, Plaintiffs request the notice and consent forms be sent to putative class members twice, via first class mail and via e-mail, for the first time within seven (7) days from the date that Defendants produce the list of putative class members, and for a second time thirty (30) days thereafter.  Plaintiffs propose that class members interested in joining the case should be required to file their consents with the Court within sixty (60) days of mailing.  In order to ensure the notice and consent forms are sent to as many class members as possible, Plaintiffs request the Court to order Defendants produce the names, all known addresses, telephone numbers, dates of birth, e-mail addresses (b0th work and personal), and the last four Social Security number digits, for all putative class members.

Defendants respond that Plaintiffs' proposed notice is misleading and that it should

---

[27] R. Doc. 48-17.

[28] *See* R. Doc. 48-19 (sample electronic signature service consent to join collective action).

be revised to include Defendants' position and contact information for Defendants' counsel. In addition, Defendants submit that the three-year period regarding technicians who should receive notice should run from the date the Court certifies the class, not the date of the complaint. Defendants further propose that notice and consent forms should be distributed only once, via first class mail, and that class members should be given only thirty (30) days to opt-in to the lawsuit after notice is mailed. Finally, Defendants oppose Plaintiffs' request for the last four digits of class members' Social Security numbers.

After considering the parties' supplemental memoranda, first, the Court finds that Plaintiffs and Defendants should meet and confer regarding the form of the notice and consent that will be distributed to class members no later than **Monday, July 8, 2013**. *See Lang*, 2011 WL 6934607 , at *10; *Melson*, 2008 WL 2598988, at *5. Thereafter, if the parties are able to agree on the notice and consent forms, such forms shall be filed with the Court no later than **Monday, July 15, 2013**. If the parties are unable to agree on the language of the notice and consent forms, the parties shall submit their objections, and supporting authority, to the Court no later than **Monday, July 22, 2013,** and refer such objections to the U.S. Magistrate Judge assigned to this case for resolution.

Second, Plaintiffs have submitted ample authority indicating that federal district courts, including courts in the Eastern District of Louisiana and the Fifth Circuit, frequently utilize e-mail to provide notice of collective actions to potential class members. *See Lang*, Case No. 10-1085, R. Doc. 280 and *Lang*, 2012 WL 3263729, at *1 n.7 (E.D. La. Aug. 9, 2012) (Brown, J.); *McCarragher v. Ryland Group, Inc.*, 2012 WL 4857575, at *6 (S.D. Tex. Oct. 11, 2012); *Altier v. Worley Catastrophe Response, LLC*, 2012 WL 161824, at *27 (E.D. La. Jan. 18, 2012) (Wilkinson, M.J.) (providing notice of proposed settlement agreement

20

in a collective action via e-mail); *see also Santiago*, 2011 WL 6372348, at *8; *Pippins V. KPMG, LLP*, 2012 WL 19379, at *16 (S.D.N.Y. Jan. 3, 2012); *Kelly v. Bank of America, N.A.*, 2011 WL 7718421, at *2 (N.D. Ill. Sept. 23, 2011); *Nobles v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 3794021, at *10 (W.D. Mo. Aug. 25, 2011); *Phelps v. MC Commc'n, Inc.*, 2011 WL 3298414, at *8 (D. Nev. Aug. 1, 2011); *Lewis v. Wells Fargo & Co.*, 669 F.Supp.2d 1124 (N.D. Cal. 2009).  Courts have also approved the use of online, electronic signature opt-in forms.  *See Kelly*, Case No. 10-5332, R. Doc. 151 (N.D. Ill. Sept. 23, 2011); *Nobles*, Case No. 10-4175, R. Doc. 128 (W.D. Mo. Aug. 25, 2011).  Given that the class members are technologically sophisticated, as evidenced by the nature of their employment as satellite television technicians, the Court will approve Plaintiffs' requests to disseminate notice and consent forms via e-mail, in addition to first class mail, and to allow class members to execute electronic consent forms.  Moreover, as Plaintiffs will shoulder the cost of notifying the class members, the Court also will approve Plaintiffs' request that notice should be sent twice.

Third, with respect to Defendants' argument that notice should be given only to technicians employed within the three years prior to the date of the Court's order, the Court has reviewed the caselaw and determined that courts have not been consistent in whether the time period runs relative to the date of the complaint or relative to the date of the court's order conditionally certifying the matter as a collective action.  *Compare Montgomery v. Wal-Mart Stores, Inc.*, 2007 WL 2783348, at *3 (S.D. Miss. Sept. 24, 2007) (providing notice to class members "who were employed during the past three years as hourly associates"), *and Foraker v. Highpoint Sw. Servs., LP*, 2006 WL 2585047, at *5 (proving notice to class members who worked in certain positions "during the three year

period before this ruling"), *with Williams*, 2006 WL 1235904, at *3 (providing notice to class members allegedly denied overtime wages and were employed with defendant employer for the five years prior to the date of the court's order) *and Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 365 (M.D. Al. 1999) ("Plaintiffs, therefore, will be authorized to give notice of this lawsuit to a limited class, consisting of those hourly wage employees who worked at Defendant's . . . restaurant during the three (3) years preceding the filing of this lawsuit.").  Given the consolidated nature of this matter, the Court will provide notice to all IET technicians employed in the three years prior to the filing of Plaintiffs' complaint and from the date of the filing of the complaint through the date of the Court's order.

With respect to Defendants' argument that class members should be given only thirty (30) days to opt-in to the lawsuit after notice is mailed, rather than Plaintiffs' requested sixty (60) days, the Court observes that other sections of this Court have provided more than thirty (30) days for class members to opt-in.  *See Lang*, Case No. 10-1085, R. Doc. 280 (60 days from the dissemination date of notice); *Fernandes da Silva v. M2/Royal Constr. of La., LLC*, 2009 WL 3565949, at *6 (E.D. La. Oct. 29, 2009) (Lemmon, J.) (90 days from the date defendants provided plaintiffs with class members' names and contact information).  As a result, the Court will provide sixty (60) days for class members to opt-in after notice is mailed.

Finally, the Court recognizes the significant privacy and security concerns inherent in disclosing the last four digits of class members' Social Security numbers.  Though some courts have ordered defendants to provide this information to plaintiffs, *see Nobles*, 2011 WL 3794021, at *10, others have refused to do so for the reasons Defendants urge.  *See Humphries v. Stream Int'l, Inc.*, 2004 U.S. Dist. LEXIS 20465, at *12 (N.D. Tex. Feb. 13,

22

2004) (declining to order defendants to produce the last four digits of class members' Social Security numbers because "[t]his highly personal information about persons who may in fact have no interest in this litigation should not be disclosed on the thin basis that [plaintiff's] counsel desires it.").  As the Court will permit Plaintiffs' to provide notice via e-mail, and will order Defendants to produce all e-mail addresses – both work and personal – in Defendants' possession to Plaintiffs no later than **Friday, June 28, 2013**, the Court concludes Plaintiffs are adequately equipped to notify all potential class members.  Even if a class member has relocated since leaving employment with IET, it is unlikely such a person also will have changed his personal e-mail address.  The privacy and security concerns inherent in disclosing any portion of a Social Security number, when Plaintiffs here will have a wealth of other information to use to contact class members, outweigh the benefit of such disclosure.

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion to conditionally certify this matter as a collective action is **GRANTED**.  The Court conditionally certifies this matter as a collective action with respect to all technicians employed with Defendants for the period beginning three years preceding the filing of Plaintiffs' complaint and through the date of this order.

**IT IS FURTHER ORDERED** that counsel for the parties shall meet and confer regarding the notice and consent forms that will be distributed to class members no later than **Monday, July 8, 2013**.

**IT IS FURTHER ORDERED** that, in the event the parties agree on the proposed notice and consent forms, the parties shall submit such forms to the Court no later than **Monday, July 15, 2013**.  If the parties are unable to agree on the language of the notice

and consent forms, **IT IS FURTHER ORDERED** that the parties shall submit (1) their proposed notice and consent forms and (2) their objections, with supporting authority, to the opposing party's notice and consent forms, to the Court no later than **Monday, July 22, 2013**. After the Court approves the notice and consent forms, such forms will be distributed to class members twice, via first class mail and via e-mail, for the first time within seven (7) days from the date of the Court's order, and for a second time thirty (30) days thereafter. Class members seeking to opt-in to this case will be given sixty (60) days from the date the first notice is mailed to opt-in.

In order to facilitate the distribution of notice and consent forms, **IT IS FURTHER ORDERED** that Defendants shall produce all known addresses, telephone numbers, dates of birth, and e-mail addresses (both work and personal) for all class members in Defendants' possession no later than **Friday, June 28, 2013**.

**New Orleans, Louisiana, this 13th day of June, 2013.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**